## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division

| | |
|---|---|
| **CRYSTAL DOUGLAS,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| v. | :      **ACTION NO. 4:13CV97** |
| | : |
| **KROGER LIMITED PARTNERSHIP I,** | : |
| | : |
| | : |
| **Defendant.** | : |

### OPINION AND ORDER

This matter is before the Court on Kroger's Motion for Summary Judgment. (ECF No. 9). Crystal Douglas ("Douglas") alleges that she slipped and fell in a puddle of water on the floor of a Kroger store in Yorktown, Virginia on July 29, 2010, sustaining serious injuries. Douglas claims that the puddle was a dangerous and defective condition and was due to Kroger's negligence. Kroger argues that despite having no notice of the puddle, it nonetheless discharged its duty to warn by placing warning cones in the area in anticipation of slippery conditions due to heavy rain. By failing to heed that warning, Kroger asserts, Douglas was contributorily negligent as a matter of law. After considering the parties' briefs, exhibits and oral argument, and viewing the facts in the light most favorable to Douglas, reasonable jurors could conclude Kroger was negligent and that Douglas' failure to see the puddle was not for lack of ordinary care. Accordingly, for the reasons set forth in detail below, the Court denies Kroger's Motion for Summary Judgment.

### I.      FINDINGS OF MATERIAL FACT

On July 29, 2010, Douglas, in the midst of a heavy rain storm, was shopping in a Kroger

store in Yorktown, Virginia.  As she was leaving, she slipped and fell in a puddle of water located immediately next to a mat near the produce-side exit.  As a result of her fall, she injured her wrist and leg.  (ECF Nos. 10-2 at 36-37, 10-3 at 73).

After her fall, Douglas described being "soaked with water."  (ECF No. 10-2 at 39). Additionally, although she had not seen anything dripping while she was walking towards the exit, immediately after her fall she noticed "a lot of water" on the floor, and observed a "steady flow" of water dripping from the ceiling.  (ECF Nos. 10-2 at 40, 47, 10-3 at 55).  Douglas was eventually assisted by a Kroger Employee, Roland Walker ("Walker"), who apologized for her accident, explaining that the site of her fall had been "a problem area."  (ECF No. 10-2 at 43). According to Douglas, Walker indicated that although he had not seen any water in that specific location on that date, the roof in that part of the store was known to leak during heavy rain. (ECF No. 10-3 at 64).

Richard Abernathy ("Abernathy"), Kroger's co-manager at the time of the accident, was not present when Douglas fell.  In depositions, he recalled no prior instances where water leaked from the roof at the specific location of Douglas' fall.  (ECF No. 10-6 at 15).  Abernathy first testified to leaks in only one area of the store, located at the opposite end from the produce area. Id.  After a later review of the store's maintenance records, however, Abernathy was deposed a second time, and testified that three areas of the store's roof had actually been repaired prior to the incident, "specifically in the areas of the back room receiving area, the floral department, and also the cart corral foyer." (ECF No. 15-1 at 10).   He still maintained none of these repaired areas of the roof encompassed the area of Douglas' fall.  Id.

Prior to leaving work on the date of the incident, Abernathy observed wet floor signs on display by the entrance in the produce section, a practice he described as standard procedure at

2

each of the two entrances to the store once it started to rain to warn of potentially slick conditions associated with water tracked in from customer traffic. (ECF No. 10-6 at 10-11). Surveillance footage of the accident shows one yellow cone on display several feet to the inside of the security scanners and sliding door entrance to Kroger's produce section. What appears to be a rubber-bottomed floor mat lies between the scanners, and a stack of hand baskets is situated directly to the right of the right-hand scanner. As the video progresses, Douglas walks several feet to the inside of the cone, immediately in front of the stack of baskets. She slips and falls directly in front of the right scanner. Photographs taken shortly after Douglas' accident show pooled water directly in front of the right-most scanner and to the right of the rubberized mat – the location where Douglas appears to have fallen. The same photographs show little to no water being tracked into the store onto areas not covered by the floor mat.

After the fall, Douglas is seen leaving the frame of the video, presumably to find Walker or another Kroger employee. Before the two return, another customer enters the store, pauses, and looks up to the ceiling and then to the spot where Douglas fell before walking around it. Douglas then reappears and shows Walker the spot. Walker leaves and returns with a small trashcan approximately one minute later, placing the can slightly to the right of where Douglas fell. Walker also steps into the cart corral/foyer area and glances at the ceiling. He then re-positioned the cone so that it was directly next to the trashcan in the general area of the accident and placed another trashcan in the cart corral/foyer.[1]

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 requires the Court to grant a motion for summary

---

[1] The video footage was offered as an exhibit by Kroger in support of its Motion for Summary Judgment (ECF No. 10-10), and no party raised an objection to the contents of the video under Rule 407. As a result, the Court expresses no opinion on whether Walker's actions in placing the bucket and moving the cone would be inadmissible at trial as a subsequent remedial measure.

judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).   "A material fact is one 'that might affect the outcome of the suit under the governing law.'   A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"   Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).   If there is no genuine issue as to any material fact, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."   Celotex Corp., 477 U.S. at 323.

The party seeking summary judgment has the initial burden of informing the Court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact.   Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."   Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Anderson, 477 U.S. at 255.   "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   Anderson, 477 U.S. at 249.

4

### III.   ANALYSIS

Courts sitting in diversity apply the forum state's substantive law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). In Virginia, the rules applicable to slip-and-fall cases are "well settled." Winn-Dixie Stores, Inc. v. Parker, 240 Va. 180, 182, 396 S.E.2d 649, 650 (1990). A store owner owes its customers a duty to exercise ordinary care towards them while they are on the premises. Id. This duty requires an owner to maintain the store's premises in a reasonably safe condition and to warn a customer of any unsafe condition that either was or should have been known to the owner. Colonial Stores Inc. v. Pulley, 203 Va. 535, 537, 125 S.E.2d 188, 190 (1962). "An owner of the premises, however, is not an insurer of the invitee's safety. The invitee must look out for 'open and obvious' dangers." Newcomb v. Food Lion, Inc., 94 F.3d 642, 1996 WL 469902, at *1 (4th Cir. 1996) (unpublished) (citing Rocky Mount Shopping Ctr. Assocs. v. Steagall, 235 Va. 636, 369 S.E.2d 193 (1998)). Failure to do so may render the plaintiff contributorily negligent. Id.

To establish a prima facie case in a premises liability action, "the plaintiff must introduce evidence of the responsible person's actual or constructive knowledge of a defective condition on the premises . . . ." Grim v. Rahe, Inc., 246 Va. 239, 242, 434 S.E.2d 888, 889 (1993). When there is no evidence of actual knowledge, a plaintiff must proffer sufficient evidence to make out a prima facie case of negligence based on constructive knowledge. Id. at 242, 434 S.E.2d at 889-90. To establish constructive knowledge, the plaintiff must show the hazard was noticeable and "had been there long enough that the defendant ought to have known of its presence . . . ." Pulley, 203 Va. at 537, 125 S.E.2d at 190. "[I]f the evidence fails to show when a defect occurs on the premises, the plaintiff has not made out a prima facie case [of negligence]." Grim, 246 Va. at 242, 434 S.E.2d at 890 (citing Parker, 246 Va. at 184, 396 S.E.2d at 651). In sum, "[i]f an

ordinarily prudent person, given the facts and circumstances [the defendant] knew or should have known, could have foreseen the risk of danger resulting from such circumstances, [the defendant] had a duty to exercise reasonable care to avoid the genesis of the danger." Memco Stores, Inc. v. Yeatman, 232 Va. 50, 55, 348 S.E.2d 228, 231 (1986).

**A.    Reasonable jurors could find that Kroger was on constructive notice of a dangerous condition.**

To establish a prima facie case of negligence, Douglas must first show that Kroger created, was aware of, or should have been aware of the dangerous condition that caused her injury. See Eure v. Kroger Ltd. P'ship I, No. 7:11CV00190, 2012 WL 896347, at *4 (W.D. Va. Mar. 15, 2012). Having produced no evidence suggesting Kroger created the hazardous condition itself, to defeat the motion for summary judgment Douglas must demonstrate that Kroger either had actual or constructive notice of the hazardous condition in time to correct it.

In this case, Douglas contends that she "has already proved, as established by the defendant's own employees, that the defendant was aware of a defective condition." (ECF No. 11 at 3). She argues that Walker, as a Kroger employee, has testified that the roof in the area of Douglas' fall was prone to leaking during heavy rain. Id. In response, Kroger maintains that there is no evidence that it was on notice of the specific defect that caused Douglas' fall – i.e. the water dripping from the leak on that day and time, creating the puddle which caused her fall. (ECF No. 10 at 8). More specifically, Kroger claims, because Douglas is unable to prove how long the roof was leaking prior to her accident, she cannot prove Kroger was on notice of the "defect" which caused her fall. Id.

Kroger's position overstates Douglas' burden on summary judgment in the circumstances presented here. Viewing the facts in the light most favorable to Douglas, the Court finds that a reasonable juror could conclude the store had actual or constructive notice of the defect which

caused her fall.   She has met her evidentiary burden by presenting evidence from which reasonable jurors could conclude that Kroger knew the roof leaked during a heavy rain, and also knew it was raining heavily on the date of Douglas' accident, and took no steps to guard against this particular hazard.

In his deposition, Walker indicated that it was the store's practice to place a safety cone in the foyer area and just inside the entrance doors when it began to rain as a precautionary measure.   (ECF No. 10-8 at 18).   He testified that he did this on the date of Douglas' fall once he saw it starting to rain.   Id.   Abernathy confirmed Walker's statements regarding the store's standard procedure in placing cones out when it starts to rain to warn customers of possible tracking and accumulating water.   (ECF No. 10-6 at 10-11).   He recalled seeing "normal tracking" in the area prior to leaving the store on the date of the accident, but saw no water in the store itself, and noticed no leaking. Id. at 13-14.   Douglas also testified that Walker apologized immediately after the incident, explaining that "[he] thought that [he] had gotten water up everywhere, but apparently this [was] an area that [he] missed," (ECF No. 10-3 at 64), and that the area was a "problem area," known to leak in heavy rain. (ECF Nos. 10-2 at 43, 10-3 at 64).

In response to questions by Kroger's counsel, Walker also stated he had no knowledge or information about water on the floor that day prior to Douglas' fall.   (ECF No. 10-9 at 30).   But this testimony was given more than two years after the fall, and coincides with Walker's limited recall of the events in general.   Despite lacking a clear (or any) memory of the incident, Walker's contemporaneous statements suggest that the area in which Douglas fell was prone to leaking during heavy rain.   During her deposition, for example, Douglas explained that after apologizing for her fall, Walker explicitly stated that "it had been a known problem in the store that whenever we have a large storm, the roof leaks in that area."   (ECF No. 10-3 at 64).   When he was

7

deposed, Walker could not recall that specific statement, but he did not deny making it. (ECF No. 10-8 at 24). He also acknowledged, without leading, that he made a similar statement to a paralegal working for Douglas' counsel. Without detailed prompting at his deposition, Walker testified he recalled telling that individual "that in cases of heavy rain, that area was known to leak." Id.

Abernathy has denied any knowledge of any incidents where water was leaking from the roof at that particular location of the store prior to Douglas' accident. (ECF Nos. 10-6 at 14-15, 10-17 at 29). He studied records dating from 2008, and indicated that the only areas of the roof that required repairs prior to Douglas' accident were the "back room receiving area, the floral department, and also the cart corral foyer." Id. at 10. Further, the only repair that he was aware of having been conducted after Douglas' accident was an October 2013 job addressing "one or two areas" on the sales floor, the exact locations being unknown. Id. at 17-18. Although Abernathy is vehement in his testimony that Kroger had no knowledge of any leaking in that area of the store, this conflict in the testimony is a material issue for trial. Walker's repeated statements that it had leaked, coupled with Douglas' testimony that she observed water streaming down from the ceiling immediately after the accident would permit jurors to reasonably infer that a roof leak did indeed cause her fall. Additionally, the surveillance footage depicts Walker almost immediately deploying a bucket to catch dripping water in the area of Douglas' fall, as well as another customer's brief glance up at the ceiling when he entered. Accepting the facts in the light most favorable to Douglas, Kroger was on notice that the area of the store where she fell was known to leak in a heavy rain.

In its brief, Kroger repeatedly emphasizes that neither Douglas nor Walker were able to testify to how long the roof had been leaking on that day prior to her fall. In fact, it is possible

jurors might infer notice from Walker's statements, the location of the leak, or the volume of accumulated water. But even if Douglas is unable to prove exactly how long the water had been leaking from the ceiling prior to her accident, her evidence is sufficient to permit a reasonable juror to conclude that Kroger knew of the "genesis of the danger" (i.e., the underlying leak), knew it was raining heavily for some time prior to Douglas' fall and took no specific steps to guard against the accumulation of water which caused her fall. See Memco Stores, Inc., 232 Va. at 55, 348 S.E.2d at 231.

**B.**   **Reasonable jurors could find that Douglas exercised ordinary care for her safety under the circumstances.**

As an alternative ground for summary judgment, Kroger also asserts that Douglas was contributorily negligent as a matter of law because, by her own testimony, she was aware of the rainy conditions outside and specifically noticed three safety cones as she entered the store near the area where she eventually fell on her way out. Kroger also points out the undisputed video evidence depicts Douglas walking directly towards a "large yellow cone with nothing obstructing her view before she slipped and fell only a few feet from it." (ECF No. 10 at 11). Because Douglas allegedly could have and should have seen the warning cone on exiting the store, she should have used appropriate caution as she walked through the area. Id. Instead, Kroger claims she walked "blindly" towards the exit and failed to exercise reasonable care for her own safety, rendering her guilty of contributory negligence as a matter of law.

In response, Douglas maintains the question of her contributory negligence should be left for the jury. (ECF No. 11 at 4). According to her, the warning cone's location effectively "created an aisle for her to walk directly into the water." Id. She claims that it was entirely appropriate for her to walk several feet to the right of the cone as "[o]ne would think that the plaintiff would have the right to assume that the 'wet floor' sign would actually be in the area

where the floor was wet, as opposed to off to the left . . . ." Id.

As indicated previously, a store owner is not an insurer of the invitee's safety, and also "has no duty to warn its invitees of an unsafe condition which is open and obvious to a person exercising reasonable care for her own safety." Salyers v. Lowe's Home Centers, Inc., No. 1:06CV00104, 2007 WL 1189488, at *3 (W.D. Va. Apr. 20, 2007) report and recommendation adopted, No. 1:06CV00104, 2007 WL 1472069 (W.D. Va. May 18, 2007). Even if the owner of the premises was negligent in creating or failing to rectify a hazardous floor condition, a plaintiff's contributory negligence is an affirmative defense in Virginia. See Tazewell Supply Co. v. Turner, 213 Va. 93, 95-96, 189 S.E.2d 347, 349 (citing Gottlieb v. Andrus, 200 Va. 114, 104 S.E.2d 743 (1958)). See also, Fultz v. Delhaize Am., Inc., 278 Va. 84, 89, 677 S.E.2d 272, 275 (2009). That is, "if the plaintiff fails to exercise reasonable care, and this failure contributes to the cause of her injury, she cannot recover from the defendant." Salyers, 2007 WL 1189488 at *3.

Normally, "both contributory negligence in general, and the open and obvious nature of the hazard in specific, are jury questions." Newcomb, 94 F.3d 642, 1996 WL 469902 at *2 (citing Airtrip v. E.E. Berry Equip. Co., 240 Va. 354, 358, 397 S.E.2d 821, 823 (1990). "Where there exists no conflict in the evidence, or where reasonable persons cannot disagree as to the inferences to be drawn from the evidence presented, the Court may decide the issue in lieu of a jury." Williams v. Food Lion, LLC, No. 3:09CV108, 2009 WL 3366923, at *2 (E.D. Va. Oct. 16, 2009) (citing Knight v. Moore, 179 Va. 139, 146, 18 S.E.2d 266, 270 (1942)).

"[T]he guiding inquiry in determining whether a defect was open and obvious is 'whether the plaintiff would have seen the hazard if she had been looking.'" Cameron v. K Mart Corp., No. 3:09CV00081, 2010 WL 2991014, at *3 (W.D. Va. July 30, 2010) (citing Hudson v. Kroger

Co., No. 6:06CV46, 2007 WL 2110340, at *3 (W.D. Va. July 18, 2007); City of South Norfolk v. Dail, 187 Va. 495, 47 S.E.2d 405 (1948)).  The Supreme Court has specifically declined to hold that a pedestrian's failure to look down while walking forward constitutes contributory negligence in every case.  Little Creek Inv. Corp. v. Hubbard, 249 Va. 258, 261, 455 S.E.2d 244, 246 (1995).  Instead, "the circumstances of each case must be considered to determine whether a pedestrian who failed to look nevertheless produced sufficient evidence to support a finding that the pedestrian exercised reasonable care for . . . her safety under the circumstances."  Id. Moreover, "if such evidence is produced, a jury question is presented."  Id.

Under the circumstances of this case, the Court concludes that reasonable minds may disagree whether the wet floor which allegedly caused Douglas' fall constituted an open and obvious condition.  The water was clear, and appears to have puddled in a relatively small area near the baskets and scanners.  The security footage shows Douglas following another woman out of the store.  The first woman, who was pushing a fully loaded shopping cart, traversed the area without incident, but Douglas, who appears to have been walking at a normal pace, slipped and fell close behind her.  "Viewed in the light most favorable to [Douglas], the evidence indicates that the condition of [Kroger's] floors was 'open' to [Douglas], but not necessarily 'obvious' to her, thus rendering this issue a question for the jury."  Williams, 2009 WL 3366923 at *3.

With regard to the warning cone, and viewed in the light most favorable to Douglas, the evidence does establish (and the security footage confirms) that Douglas fell within several feet of a yellow safety cone.  But the undisputed testimony is that the cone was placed to warn customers of potentially slick conditions associated with tracked-in water as a result of the wet weather.  Douglas does not recall having seen the cone on exiting, and cannot provide an

explanation for her failure to do so. (ECF No. 10-1 at 54). Regardless of whether she saw the cone or not on exiting the store, its placement does not conclusively warn invitees of the danger where she eventually fell. Instead, as Douglas argues, reasonable jurors could conclude the placement of the cone "created an aisle for her to walk directly into the water" which was leaking from the ceiling. (ECF No. 11 at 4). Although Kroger contends that the safety cone was sufficient to put Douglas on notice of the hazard, no one has testified that the cone was related to the roof leak. Instead, the photographic evidence appears to establish that the cone – placed to warn customers of the potential for tracked water – had little to no water around it. It was placed several feet inside the security scanners, while the area where Douglas fell was to the immediate right of the right-most scanner and had puddling water. Shortly after her fall, the security footage depicts the Kroger employee Walker placing a small trashcan or bucket near the area where Douglas fell and re-positioning the safety cone nearby. These facts are consistent with Walker's contemporaneous incident report describing the area as having "a lot of water," and Douglas' testimony that water was streaming from the ceiling and that her clothes were soaked after the fall. (ECF Nos. 10-2 at 46, 10-3 at 55, 10-8 at 19).

Given those facts, and viewing the evidence in the light most favorable to Douglas, reasonable jurors may disagree on the question of whether she exercised ordinary care for her own safety. Accordingly, the question of her contributory negligence is for the jury.

## I.V.   <u>CONCLUSION</u>

For the reasons set forth above, the Court DENIES Kroger's Motion for Summary

Judgment.

/s/

Douglas E. Miller

United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

February 7, 2014